# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

ROY FALLS-BEY,

      Plaintiff,

  v.                                          Civil Action 2:17-cv-1103
                                             Magistrate Judge Jolson

WARDEN BRIAN COOK, et al.,

      Defendants.

## OPINION AND ORDER

This matter is before the Court on the following: (1) Defendants' Motion for Summary Judgment (Doc. 24); (2) Plaintiff's Counter Motion for Summary Judgment (Doc. 25); (3) Plaintiff's Motion for General Discovery for Trial Preparation (Doc. 26); and (4) Defendants' Motion for Extension of Time (Doc. 27). For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 24) is **GRANTED** and Plaintiff's Counter Motion for Summary Judgment (Doc. 25) is **DENIED**. Accordingly, Plaintiff's Motion for General Discovery for Trial Preparation and Defendants' Motion for Extension of Time (Docs. 26, 27) are **DENIED as moot**.

### I.    BACKGROUND

Plaintiff initiated this action on December 15, 2017, pursuant to 42 U.S.C. § 1983, alleging civil rights violations concerning his right to practice his Moorish Science Temple of America religion. (Doc. 1). On March 23, 2018, pursuant to its 28 U.S.C. § 1915(e)(2) initial screening, the Court dismissed Defendant State of Ohio from this lawsuit and permitted Plaintiff to proceed on his claims against the remaining defendants. On June 4, 2018, the parties consented to the jurisdiction of a Magistrate Judge (Doc. 20), and all further proceedings were referred to the

Undersigned. (Doc. 21).

Defendants filed their Motion for Summary Judgment on September 4, 2018 (Doc. 24), and Plaintiff filed his Counter Motion for Summary Judgment (Doc. 25) on September 18, 2018. On October 15, 2018, Plaintiff filed a motion seeking general discovery (Doc. 26), and on October 29, 2018, Defendants filed a motion seeking an extension of the discovery and dispositive motion deadlines (Doc. 27). This matter is fully briefed and ripe for review.

**II.     STANDARD**

The standard for summary judgment is well established. Under Rule 56 of the Federal Rules of Civil Procedure, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). "The standard of review for counter-motions for summary judgment does not differ from the standard when one party files such a motion." *Przybysz v. City of Toledo*, 302 F. Supp. 3d 915, 926 (N.D. Ohio 2017), *aff'd*, No. 18-3139, 2018 WL 3993546 (6th Cir. Aug. 20, 2018) (citing *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2458, 91 L.

Ed. 2d 265 (1986). "The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party." *Anderson*, 477 U.S. at 251.

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying and demonstrating the absence of a genuine issue of material fact. *Catrett*, 477 U.S. at 323. Once the moving party has met its initial burden, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting former Fed. R. Civ. P. 56(e)); *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995). "Once the burden of production has so shifted, the party opposing summary judgment cannot rest on the pleadings or merely reassert the previous allegations. It is not sufficient to 'simply show that there is some metaphysical doubt as to the material facts.'" *Gover v. Speedway Super Am., LLC*, 284 F. Supp. 2d 858, 862 (S.D. Ohio 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 547 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). Instead, the non-moving party must support the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1).

A "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Gover*, 284 F. Supp. 2d at 862. *See also* Fed. R. Civ. P. 56(c)(3).

### III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendants, in their summary judgment motion, assert that Plaintiff's claims should be dismissed because Plaintiff has failed to exhaust his administrative remedies. (*See generally* Doc. 24). The Court agrees.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (the "PLRA"), requires that a prisoner filing a § 1983 claim first exhaust available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, a52 L. Ed. 2d 12 (2002); *Booth v. Churner*, 532 U.S. 731, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001). The PLRA provides, in pertinent part:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

To satisfy the exhaustion requirement, an inmate plaintiff must "complete the administrative review process in accordance with the applicable procedural rules . . . as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006). "[F]ailure to exhaust is an affirmative defense under the PLRA, and [] inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Block*, 549 U.S. 199, 216, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). *See also Vandiver v. Corr. Med. Servs.*, 326 F. App'x 885, 888 (6th Cir. May 1, 2009) (noting that failure to exhaust "is an affirmative defense on which the defendant bears the burden of proof"). While exhaustion is not a jurisdictional prerequisite, the requirement is mandatory, *Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999), even if proceeding through the administrative procedure would appear to the inmate to be "futile." *Hartsfield v. Vidor*, 199 F.3d 305, 308–10 (6th Cir. 1999).

Inmates, like Plaintiff, incarcerated at institutions that are maintained by the Ohio Department of Rehabilitation and Correction ("ODRC"), are bound to follow the three-step inmate grievance procedure set forth in Ohio Admin. Code ("O.A.C.") § 5120-9-31. (Doc. 24-1 (Declaration of Eugene Hunyadi ("Hunyadi Decl.") ¶ 3)). The procedure is available to an inmate

4

"regardless of any disciplinary status, or other administrative or legislative decision to which the inmate may be subject," O.A.C. § 51209-9-31(D), and is intended to "address inmate complaints related to any aspect of institutional life that directly and personally affects the grievant," including "complaints regarding policies, procedures, conditions of confinement, or the actions of institutional staff." O.A.C. § 5120-9-31(A). Certain matters are not grievable, including "complaints unrelated to institutional life, such as legislative actions, policies and decisions of the adult parole authority, judicial proceedings and sentencing or complaints whose subject matter is exclusively within the jurisdiction of the courts or other agencies." O.A.C. § 5120-9-31(B).

The grievance procedure established by O.A.C. § 5120-9-31 involves three steps. First, an inmate must file an informal complaint within fourteen days of the event giving rise to the complaint. O.A.C. § 5120-9-31 (K)(1). The informal complaint must be addressed "to the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint." *Id*. If the informal complaint is resolved in a manner that is unsatisfactory to the inmate, the inmate must file a notification of grievance with the inspector of institutional services within fourteen days. O.A.C. § 5120-9-31(K)(2). If the inmate is dissatisfied with the disposition of the grievance, the inmate must then appeal to the office of the chief inspector within fourteen days. O.A.C. § 5120-9-31(K)(3). "The decision of the chief inspector or designee is final." *Id*. Remedies for valid grievances include "changes to institutional policies or procedures, the implementation of new policies or procedures, and/or corrective action specific to the inmate's complaint." O.A.C. § 5120-9-31(L). "A prisoner's lack of compliance may be excused if the administrative remedies are not available, but [the Sixth Circuit] has required a prisoner to make 'affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable.'" *Lee v. Willey*, 789 F.3d 673,

677 (6th Cir. 2015) (quoting *Napier v. Laurel Cnty.*, 636 F.3d 218, 223 (6th Cir. 2011)).

Dismissal without prejudice of a civil rights complaint is appropriate if a prisoner fails to first exhaust administrative remedies. *See, e.g.*, *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005). And, relevant here, "the exhaustion affirmative defense may be raised by a motion for summary judgment if the defendant successfully demonstrates that no genuine issue of material fact exists and the defendant is entitled to judgment as a matter of law on that defense." *Anderson v. Jutzy*, 175 F. Supp. 3d 781, 787 (E.D. Mich. 2016) (citing *Goad v. Mitchell*, 297 F.3d 497, 504–05 (6th Cir. 2002)). "The summary judgment motion is especially well suited to pretrial adjudication of an exhaustion defense, because proof of lack of exhaustion generally requires resort to matters outside the pleadings, such as affidavits or documentary evidence." *Id*.

## IV. DISCUSSION

Here, the Court concludes that Defendants are entitled to summary judgment on the ground that Plaintiff failed to satisfy the exhaustion requirements set forth in the PLRA. Defendants attach uncontested evidence, including the Declaration of Assistant Chief Inspector, Eugene Hunyadi (Doc. 24-1 at 1–4), as well as copies of Plaintiff's informal complaints regarding his grievances (*id*. at 6–9). Mr. Hunyadi addresses grievance appeals from inmates and serves as the custodian of these records. (Hunyadi Decl., ¶ 2). Mr. Hunyadi reviewed Plaintiff's grievance file and concluded that Plaintiff "only submitted informal complaints" related to his claims. (*Id*. at ¶ 10).

The attached grievance records consist of Plaintiff's two "Informal Complaint Resolution" forms. (Doc. 24-1 at 6–9). Plaintiff's first informal complaint, dated September 19, 2017, describes an encounter with Officer Salt, in which the two discussed Plaintiff's religious practices. (*Id*. at 6). Specifically, Plaintiff alleges that Officer Salt confronted Plaintiff after Plaintiff greeted his Moorish brothers, and subsequently demanded "proof that the Moorish Science Temple of

America is a legal religion." (*Id*.). Plaintiff states that Officer Salt "interrogated" him about his religion and that he "felt belittle [sic] and afraid because I live and breathe Moorish Science Temple of America, Inc." (*Id*. at 7). His complaint further contends that Officer Salt took his legal papers supporting the existence of his religion. (*Id*.). The Inspector's Office responded to Plaintiff's informal complaint on September 27, 2017, informing Plaintiff that he is "allowed to practice [his] religion," but that he cannot "violate institutional rules and regulations" while doing so, and further noting that his items were returned to him. (*Id*. at 6). Pursuant to step two of Ohio's grievance procedure, Plaintiff had fourteen days from the Inspector's response to file his notification of grievance. OAC § 5120-9-31(K)(2). Plaintiff, however, failed to file his notification of grievance and thus failed to exhaust his administrative remedies with regard to his first complaint.

Plaintiff's second informal complaint, dated October 10, 2017, alleges, in part, the following:

> [t]he Moorish Science Temple of America Inc. had a meeting with Sunni Ali Islam the Imam and he said he would give us his time to oversee our study class he said it would only last till January 18, 2018 and we can only have the 14 members that is in the system. We ask if he would say that in a kite, explaining the terms of our agreement. He then said No! I will have it in writing next week. Then he starts saying Mr. England has you guys on tape doing what you do. Mr. England and Mike Davis don't want you guys to be able to have your study class you people are like a gang . . .

(*Id*. at 8).

On October 12, 2017, the Inspector submitted the following response to Plaintiff's second informal complaint:

> Inmate Falls, the MSTA from what I have researched is a recognized religious sect [] under the Islamic faith. Since we provide an Islamic Imam they are the ones we expect to oversee any religious [indecipherable] occurring within the Islamic Faith. He sets the schedule and determines what is best for the institution . . . Should you

7

> identify a volunteer Islamic Imam willing to oversee the MSTA it will be considered. The individual would need to follow any established volunteer rules. I will talk to Sunni Ali Islam about your allegation of him being disrespectful. I see no other issue in your ICR. . . . I have not received Part Two [of your ICR].

(*Id*. at 8). Again, Plaintiff failed to file his notification of grievance within fourteen days of receiving a response to his informal complaint, and thus failed to exhaust his administrative remedies with regard to his second claim.

In his counter motion, Plaintiff does not deny that he failed to exhaust; rather, he contends that he was not required to exhaust, and urges the Court to focus on the allegations in his complaint. (*See generally* Doc. 25). For example, Plaintiff broadly alleges that he "filed multiple kites and then informal complaints to shift supervisors as to the harassment and prevention of his group religious practices," but that there was "no action taken, only written responses acknowledging that they received the kites and complaints[.]" (*Id*. at 3–4). Plaintiff, however, does not explain why, after he was dissatisfied with the responses to his step one grievances, he failed to pursue steps two and three of the grievance process. Nor does Plaintiff allege that his grievances fall within one of the statutory exceptions to the exhaustion requirement. *See* O.A.C. § 5120-9-31(B) (listing exceptions to the exhaustion requirement, including "complaints unrelated to institutional life, such as legislative actions, policies and decisions of the adult parole authority, judicial proceedings and sentencing or complaints whose subject matter is exclusively within the jurisdiction of the courts or other agencies."). Moreover, the Court does not find, nor does Plaintiff provide any supporting evidence, that administrative remedies were unavailable to him.

Indeed, Plaintiff's motion contains only two responses to Defendants' exhaustion challenge: (1) that he was not required to exhaust under federal law; and (2) that he "filed a grievance through the correct process" at the institution where he was formerly incarcerated. (*See*

8

*generally* Doc. 25). First, Plaintiff relies on *Patsy v. Board of Regents of the State of Florida*, claiming that "federal courts have recognized that a plaintiff does not have to exhaust state administrative remedies." (*Id.* at 4 (citing *Patsy v. Board of Regents of the State of Florida*, 457 U.S. 496 (1982)). Plaintiff misunderstands the statutory exhaustion requirement at issue here. Plaintiff is correct that there is no general requirement that a plaintiff must first exhaust administrative remedies before bringing a § 1983 civil rights action. *See Patsy*, 457 U.S. at 507. "However, Congress created an exception to this rule for claims brought by prisoners when it passed the Prison Litigation Reform Act[.]" *Morgan v. Kentucky*, No. 3:17-CV-00474-JHM, 2017 WL 5076403, at *2 (W.D. Ky. Nov. 3, 2017), *on reconsideration in part*, No. 3:17-CV-00474-JHM, 2018 WL 715468 (W.D. Ky. Feb. 5, 2018). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. Accordingly, exhaustion is mandatory under the PLRA, and Plaintiff's reliance on *Patsy* is misplaced.

Plaintiff's other response to Defendants' exhaustion argument fares no better. Plaintiff asserts that he "filed a grievance through the correct process on the kiosk at Lancaster Correctional Institution, to the Chief Inspector on the date of November 29, 2017, which was omitted from Eugene Hunyadi's declaration." (Doc. 25 at 4). In so arguing, he contends that "[o]mitting crucial facts and evidence favorable to the Plaintiff is only one of the many important reasons why a jury trial is needed . . ." (*Id.*). Plaintiff, however, does not submit any evidence that he similarly followed the proper grievance procedure at his current prison against the Defendants in this case. And, unfortunately for Plaintiff, following the proper grievance procedure at a different prison does not cure his failure to properly exhaust the grievance procedure at the institution where he is

currently incarcerated.

Accordingly, Defendants' uncontested evidence establishes that Plaintiff did not exhaust his available administrative remedies as required under the PLRA. After he was dissatisfied with the responses to his informal grievances at the first step, Plaintiff did not pursue the next step of the three-step inmate grievance procedure. The Court therefore finds that it is undisputed that Plaintiff did not exhaust all of his available administrative remedies as required under the PLRA before bringing this action. Defendants are therefore entitled to summary judgment as a matter of law. *See Bell v. Konteh*, 450 F.3d 651, 653 n.4 (6th Cir. 2006) ("It is well established . . . that the appropriate disposition of an unexhausted claim under the PLRA is dismissal without prejudice.") (citing *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 994 (6th Cir. 2004)). *See also Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 226 (6th Cir. 2011) (noting that the "PLRA's exhaustion requirement is a strict one" and upholding grant of summary judgment where undisputed evidence established that inmate did not exhaust his administrative remedies prior to filing his lawsuit and where there was no evidence showing that the administrative remedies were unavailable to him).

## V.  CONCLUSION

For the above reasons, Defendants' Motion for Summary Judgment (Doc. 24) is **GRANTED** and Plaintiff's Counter Motion for Summary Judgment (Doc. 25) is **DENIED**. Accordingly, Plaintiff's Motion for Discovery and Defendants' Motion for an Extension of Time (Docs. 26, 27) are both **DENIED as moot**. The clerk is **DIRECTED** to **TERMINATE** this matter.

IT IS SO ORDERED.

Date:  November 1, 2018  /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE